BRASCH, Respondent, vs. ROTHSCHILD WATER POWER COMPANY, Appellant.

*September 21—October 8, 1912.*

*Waters: Dams: Flowage of land: Consent of owner: Release: Contract construed: Statutes: Action for damages: Evidence.*

1. Under a contract made in 1906 defendant had the right to overflow, by means of a dam thereafter to be erected, any part of a certain tract of land owned by plaintiff, for a compensation to plaintiff of $25 per acre. Pursuant to such contract it was in 1907, before the dam was constructed, by mutual agreement and arbitration determined that 1.2 acres would be overflowed and, in consideration of $30 paid by defendant, plaintiff acknowledged satisfaction and discharge of any damages that might thereafter be caused "by such flowage," and defendant released "the balance of the land" from the contract of 1906. In arriving at such amount of overflow it was assumed that the dam would have a head of nineteen feet, but it was afterwards constructed with a head of twenty feet, and a large area of the land in excess of 1.2 acres was flooded thereby. *Held,* that the words "such flowage" in the agreement of 1907 meant the flowage of 1.2 acres; that by the release in that agreement defendant had given up all right under the contract of 1906 to overflow the "balance of the land," meaning the remainder thereof after subtracting the 1.2 acres; and that therefore there was no consent by plaintiff to the flooding of such remainder.

2. Neither the general milldam law (ch. 146, Stats. 1898) nor sec. 1852, Stats. (1898), governs the case.

3. The defendant being the assignee of the persons authorized by ch. 155, Laws of 1903, to build the dam, and holding its power

of eminent domain under that statute, to be exercised as pro-
vided in secs. 1777a–1777d, Stats. (1898), the plaintiff had the
right to maintain an action for the flowing of the remainder of
his land, unless such action should be stayed upon defendant's
application under sec. 1777d.

4. Plaintiff was not bound in such action to show what damage was
caused by a dam at a twenty-foot head over and above the dam-
age caused by a nineteen-foot head, but was entitled to recover
for all damage to the remainder of his land, excluding the 1.2
acres.

APPEAL from a judgment of the circuit court for Marathon
county: A. H. REID, Circuit Judge.  *Affirmed.*

For the appellant there was a brief by *Brown, Pradt &
Genrich,* attorneys, and *M. B. Rosenberry,* of counsel, and
oral argument by *Mr. Rosenberry* and *Mr. L. A. Pradt.*

For the respondent the cause was submitted on the brief
of *Regner & Ringle.*

TIMLIN, J.   The complaint averred ownership and posses-
sion by the plaintiff of a specified tract of land bordering on
Rib river, an affluent of the Wisconsin river, and that the de-
fendant by means of a dam constructed in the Wisconsin river
below the inflow of the Rib river, prior to 1911, had caused
the waters of the Rib river to set back and during the months
of April, May, and June, 1911, to overflow the land of plaint-
iff, causing damage.   The defendant admitted its corporate
existence and the ownership and possession of the land by
plaintiff, and further interposed a general denial and the
special defense that plaintiff and wife had, on or about Feb-
ruary 27, 1906, entered into an agreement in writing with a
corporation known as Mathie Brothers Land Company, as-
signor of defendant, whereby for a consideration there was
granted to said Mathie Brothers Land Company the right to
overflow any part of said land by means of said dam for a
compensation to plaintiff of $25 per acre for such overflowed
land.   The defendant constructed said dam under the au-
thority and pursuant to the terms and conditions of ch. 155,

Laws of 1903, and as transferee of the persons therein named. It is also averred that the defendant began the construction of said dam in the early part of the year 1909 and completed the dam in December, 1910, and that defendant is a public utility corporation of the state of Wisconsin and was organized for the purpose of developing, creating, selling, and distributing to the public hydraulic and electric power created and generated at said dam. The answer further set forth a transaction between the plaintiff and defendant on the 28th day of December, 1907, before the construction of the dam and pursuant to the alleged contract of February 27, 1906, whereby by mutual agreement and arbitration it was determined that one and two-tenths acres of said plaintiff's land would be overflowed, and that in consideration of the sum of $30 paid to the plaintiff and his wife by the defendant the plaintiff and his said wife did acknowledge payment and satisfaction in full of any and all damages that might thereafter be caused to the plaintiff by such flowage, and the defendant on its part released the balance of the land described in said contract from said contract of February 27, 1906. It was shown that such transaction took place, and that it was assumed in arriving at the amount of overflow that the dam would have a nineteen-foot head, but the dam was afterward constructed with a twenty-foot head. The controversy hinges largely upon the legal effect of this last transaction upon plaintiff's right to recover damages for an overflow occurring in 1911. At the close of the evidence the defendant moved for a nonsuit, which motion was denied by the court. The learned circuit court construed the contract as a grant of the right to overflow an area of land, that area to be ascertained after the dam was completed and the waters were set back. The subsequent proceedings meant that the parties did not wait for this mode of ascertainment, but undertook to ascertain by a theoretical process and did ascertain that there would be one and two-tenths acres overflowed;

whereupon they received payment at the rate fixed for one and two-tenths acres and the contract was by mutual consent released so as to have no further binding effect upon either party. The circuit judge submitted the cause to the jury under instructions which put this construction upon the writing and uncontroverted acts of the parties thereunder.

The appellant argues, first, that plaintiff cannot maintain this action because the transaction of December 28, 1907, amounted to a payment for the flowage of his land by the defendant's dam and plaintiff has acknowledged satisfaction for any damages caused by such flowage. Second, the dam of the defendant having been built by consent of the plaintiff, no action for wrongful flowage by the dam can be maintained by the plaintiff against defendant, but the remedy for damages for such flowage, if any, for which he has not already been compensated must be under the provisions of sec. 1777$a$ to sec. 1777$d$, Stats. (1898), inclusive. Third, the burden of proof is on the plaintiff to establish the amount of damages, therefore he cannot recover in this cause without showing what overflow was caused by the dam at a twenty-foot head over and above the damages caused by a dam at nineteen-foot head.

The contract of February 27, 1906, was unquestionably valid and binding and it fixed the damages at $25 per acre for all of the plaintiff's land which might be overflowed, the area of such overflow to be determined by a survey after the dam was constructed. If the land was worth less than $25 per acre, this contract was a distinct advantage to the landowner and a corresponding disadvantage to the owner of the dam. Without waiting for the building of the dam the parties undertook on December 28, 1907, to compute the number of acres which would be overflowed by the dam when built. Pursuant to the first mentioned contract they selected arbitrators, a survey was made, wherein it was assumed that the dam would be of a height sufficient to create a nineteen-foot

head of water at the dam, and arrived at the conclusion that this would overflow one and two-tenths acres of plaintiff's land.  Plaintiff was paid the $30 which would be his if this estimate were correct and if the dam had been built.  The following stipulation was inserted in a contract then signed by both parties:

"Now, therefore, in consideration of the sum of thirty dollars ($30) paid by the party of the second part to the parties of the first part for such overflowed land, the parties of the first part acknowledge satisfaction and discharge of any damages that may hereafter be caused them by such flowage, and the party of the second part hereby releases the balance of the land in said southwest quarter of said section 32 from said contract so made and dated the 27th day of February, 1906."

This is capable of two somewhat different constructions. "Satisfaction and discharge of any damages that may hereafter be caused them by such flowage" may mean the flowage of one and two-tenths acres, or it may mean the flowage caused by a dam having a nineteen-foot head.  Nothing is said about the height of the dam in the contract of December 28, 1907, but that height is referred to in a map used by the surveyors in making their computation of the overflowed area, and this map is referred to in the latter contract.  But whatever ambiguity exists upon this point, there is in our estimation none whatever with reference to the release by the corporation of the remainder of the land from said contract.  This left the remainder of plaintiff's land free from the restrictions and obligations of the contract of February 27th.  The remainder of the land is what was left after subtracting one and two-tenths acres.  The remainder, called in said contract "the balance," of plaintiff's land occupied thereafter the same relation to this dam and to the defendant's right to flood plaintiff's land as if the contract of February 27th had never been made.  That clause therefore gave character to the words "such flowage" and limited those words to the flowage of the one and two-tenths acres.  A dam with a twenty-foot head

was built and a large area of the "balance" or remainder
of plaintiff's land was overflowed in consequence thereof.
Plaintiff brought this action for damages.    By reason of the
release and discharge of the contract there was no consent on
the part of the plaintiff to the subsequent flooding of the re-
mainder of plaintiff's land by the defendant's dam.    The
case is not governed by the milldam law (ch. 146, Stats. 1898)
or any analogy derived therefrom in this respect, because that
law expressly prohibits actions to recover damages except as
therein provided.    Neither is the case governed by sec. 1852,
Stats. (1898), which is the railroad condemnation statute re-
lating to instances where the railway company is in posses-
sion of a roadbed and tracks on the land of another, having
entered by his consent, tacit or express.    This corporation
holds its power of eminent domain under ch. 155, Laws of
1903, as the successor and assignee of the persons to whom
that act grants the right to build and maintain a dam.    That
statute provides for acquiring title · to overflowed lands
through condemnation proceedings under the power of emi-
nent domain as provided in secs. 1777$a$, 1777$b$, 1777$c$, and
1777$d$, Stats. (1898).    Turning to these statutes we find that
the power there given is to overflow lands and to acquire title
thereto by purchase, or in case the corporation cannot agree
with the owner for the purchase, lease, or use of the land or
any easement therein that may be necessary for the corpora-
tion, or cannot agree upon the compensation to be made to
such owner, then either the corporation or the owner of any
lands so required may apply by petition to the circuit court
for the appointment of appraisers, etc.    Sec. 1777$a$.    But it
is also provided that in case such corporation shall not have
acquired title to the lands upon which it shall have heretofore
constructed its dam or any part thereof, the court, or the pre-
siding judge thereof, may authorize the corporation to con-
tinue in possession and use and overflow such lands as have
theretofore been overflowed, during the pendency of proceed-

ings, and may stay actions or proceedings against such cor-
poration on account thereof, on its paying into court a suffi-
cient sum, or giving such security as such court or presiding
judge may direct, to pay the compensation when finally ascer-
tained.    This statute recognizes the right to maintain an ac-
tion against the corporation on account of its flowing the land.
The court may, it is true, stay this action against the corpora-
tion upon application of that corporation and upon its paying
into court a sufficient sum or giving such security as the court
or the presiding judge may direct to pay compensation there-
for when finally ascertained.    This is the only mode of get-
ting rid of such action by the owner of overflowed land pro-
vided in the statute.    After this stay and security given, if
the corporation delays or omits to prosecute the condemnation
proceedings at its cost and expense then the landowner may
do so.    Sec. 1777*d*.    This is quite a different statute from
that relating to milldams or that relating to railroads.    There
is no such application for stay here made to the circuit court.
It may be that the corporation does not want this land.    The
overflow for which the damages are sought may have been
temporary, caused by an inadvertently closed gate or an in-
advertent failure to remove flash-boards; or the corporation
may for other reasons not desire to take the land.    In any
event there is no valid ground for this objection.

The third objection by appellant is not well taken.    The
court instructed the jurors as follows:

"The burden rests upon the plaintiff to satisfy the jury to
a reasonable certainty by the greater weight of the evidence
on the questions, both that the defendant by its maintenance
of said dam and of a head of water caused the plaintiff's lands
other and further than one and two-tenths acres to be over-
flowed during the period of April, May, and June, 1911, and
thereby damaged, and also that the plaintiff has thereby suf-
fered loss and damage in some amount ascertainable to a rea-
sonable certainty from the evidence received on this trial."

No request was made for more specific instruction on this
point.    This was a sufficient submission of the cause to the

jury, enabling that body to distinguish between damages caused to one and two-tenths acres and damages caused to the remainder of plaintiff's land by the overflow, and permitting them to award against the defendant only the latter damages. It follows that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.